UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

TALLAHASSEE DIVISION

| | | |
|---|---|---|
| BONNIE FOSHEE, MILITA BARBARA DOLAN, WALTER CAPPILLO, KRISTIAN ZAMBER, ANDREA DURKEE, DAVID LAZAR, LISA SALMONS, MADELEINE F. SHATTENKIRK, and RANDY O'KANE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) | No. 4:19-cv-00612-MW-MAF<br><br>CLASS ACTION<br><br>PLAINTIFFS' UNOPPOSED MOTION TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS AND MEMORANDUM OF LAW IN SUPPORT |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| DELTA AIR LINES, INC., JETBLUE AIRWAYS CORPORATION, AMERICAN AIRLINES, INC., UNITED AIRLINES, INC., ALASKA AIRLINES, INC., and NATIONAL RAILROAD PASSENGER CORP d/b/a AMTRAK, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

4837-1472-5072

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................4

    A.   The Proposed Settlement Concerns Claims Brought in Nine Separate Lawsuits Involving Six Travel Providers that Allowed the Same Insurance Provider, AGA, to Market Trip Insurance to Customers ........................................................................4

    B.   The Parties Engage in Extensive Arms'-Length Settlement Negotiations ........................................................................10

    C.   The Proposed Settlement Terms and Agreement................................13

        1.   The Proposed Settlement Class....................................13

        2.   Monetary and Injunctive Relief ................................15

        3.   Release of Claims Against Defendants and AGA ...................18

        4.   Class Notice .......................................................19

        5.   Claims Process ....................................................20

        6.   Class Counsel's Attorneys' Fees and Expenses and Plaintiffs' Service Awards .......................................20

III.  ARGUMENT...........................................................................21

    A.   The Proposed Settlement Warrants Providing Notice to the Class ...............................................................................21

        1.   The Proposed Settlement Is Procedurally Fair .........................23

        2.   The Proposed Settlement Is Substantively Adequate ..............25

        3.   The Remaining Amended Rule 23(e)(2) Factors Are Also Met .................................................................27

            a.   Plaintiffs and Their Counsel Have Adequately Represented the Settlement Class...................................27

|   |   | b. | The Proposed Method for Distributing Relief Is Effective | 27 |
|   |   | c. | Attorneys' Fees | 28 |
|   |   | d. | The Parties Have No Other Agreements | 30 |
|   | 4. | | Settlement Class Members Are Treated Equitably | 30 |
| B. | | | The Proposed Settlement Will Likely Receive Final Court Approval | 31 |
|   | 1. | | Monetary Relief | 31 |
|   | 2. | | Injunctive Relief | 32 |
| C. | | | The Proposed Settlement Saves Plaintiffs and the Settlement Class from Considerable Litigation Hurdles | 32 |
| D. | | | Proposed Class Counsel Believe the Settlement Is Reasonable | 33 |
| E. | | | The Court Should Certify the Proposed Class | 34 |
|   | 1. | | The Class Meets the Four Requirements of Rule 23(a) | 34 |
|   |   | a. | The Class Is Sufficiently Numerous | 35 |
|   |   | b. | Questions of Law and Fact Are Common to All Class Members | 35 |
|   |   | c. | Plaintiffs' Claims Are Typical of Those of the Class | 38 |
|   |   | d. | Plaintiffs and Their Counsel Are Adequate Representatives | 39 |
|   |   |   | (1) Plaintiffs Do Not Have Interests Antagonistic to Class Members | 39 |
|   |   |   | (2) Proposed Class Counsel Are Highly Qualified and Experienced and Should Be Appointed Under Rule 23(g) | 40 |

    2. The Class Meets the Requirements of Rule 23(b)(3) ..............41

  F. The Court Should Approve the Proposed Class Notice......................43

  G. The Court Should Schedule a Fairness Hearing .................................44

IV. CONCLUSION.................................................................................................44

V. LOCAL RULE 7.1(B) CERTIFICATION....................................................45

VI. LOCAL RULE 7.1(F) WORD COUNT CERTIFICATE.............................45

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................34

*Anderson v. Bank of S., N.A.*,
  118 F.R.D. 136 (M.D. Fla. 1987) ....................................................35

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002)......................................................39

*Baker v. Thrasher Law Firm*,
  No. 4:12-cv-00630-MW/CAS, 2013 WL 12119572
  (N.D. Fla. June 10, 2013).......................................................37, 38, 39

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ....................................................32, 33

*Birmingham Steel Corp. v. Tenn. Valley Auth.*,
  353 F.3d 1331 (11th Cir. 2003) .......................................................38

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)....................................................................28, 29

*Busby v. JRHBW Realty, Inc.*,
  513 F.3d 1314 (11th Cir. 2008) .................................................37, 38, 39

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) .......................................................29

*Cheney v. CyberGuard Corp.*,
  213 F.R.D. 484 (S.D. Fla. 2003).............................................38, 39, 41

*Cotterall v. Paul*,
  755 F.2d 777 (11th Cir. 1985) .......................................................38

*Cox v. Am. Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986) .......................................................35

*Dolan v. JetBlue Airways Corp.*,
  385 F. Supp. 3d 1338 (S.D. Fla. 2019) ...............................................8

*Dolan v. JetBlue Airways Corp.*,
  No. 0:18-cv-62193-RS (S.D. Fla.)................................................................*passim*

*Donoff v. Delta Air Lines, Inc.*,
  No. 9:18-cv-81258-DMM (S.D. Fla.), *appeal pending sub nom.*, *Cappillo v.
  Delta Air Lines, Inc.*, No. 20-10931 (11th Cir.) ..........................................*passim*

*Donoff v. Delta Airlines, Inc.*,
  No. 18-cv-81258-DMM, 2020 WL 1226975
  (S.D. Fla. Mar. 6, 2020) ......................................................................................9

*Durkee v. Alaska Airlines, Inc.*,
  No. 3:19-cv-1071-AJB-JLB (S.D. Cal.) ..................................................5, 6, 9, 12

*Exum v. Nat'l Tire & Battery*,
  No. 9:19-CV-80121-Matthewman, 2020 WL 5217060
  (S.D. Fla. Sept. 1, 2020) ...................................................................................22

*Fla. Educ. Ass'n v. Dep't of Educ.*,
  447 F. Supp. 3d 1269 (N.D. Fla. 2020) .........................................23, 24, 29, 30

*Flores v. United Airlines*,
  No. 1:18-cv-06571 (N.D. Ill.) ..................................................................2, 11, 12

*Foshee v. Delta Air Lines, Inc.*,
  No. 4:19-cv-00612-MW-MAF (N.D. Fla.)..................................................*passim*

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
  No. 1:18-CV-20048-DPG, 2019 WL 2249941 (S.D. Fla. May 24, 2019) .........30

*Holmes v. Cont'l Can Co.*,
  706 F.2d 1144 (11th Cir. 1983) ........................................................................33

*In re Checking Acct. Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011)...................................................................34, 41

*In re Checking Acct. Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................23, 33

*In re Checking Acct. Overdraft Litig.*,
  No. 1:09-MD-02036-JLK, 2012 WL 12877718
  (S.D. Fla. May 16, 2012) .......................................................................35, 36, 41

*In re Checking Acct. Overdraft Litig.*,
　　No. 1:09-MD-02036-JLK, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020).........29

*In re Hyundai & Kia Fuel Economy Litig.*,
　　926 F.3d 539 (9th Cir. 2019) (*en banc*) ............................................................41

*In re Recoton Corp. Sec. Litig.*,
　　248 F.R.D. 606 (M.D. Fla. 2006) ..............................................................35, 36

*In re Terazosin Hydrochloride Antitrust Litig.*,
　　220 F.R.D. 672 (S.D. Fla. 2004)................................................................37, 38

*In re U.S. Oil & Gas Litig.*,
　　967 F.2d 489 (11th Cir. 1992) .........................................................................22

*Johnson v. NPAS Sols., LLC*,
　　No. 18-12344, 2020 WL 5553312 (11th Cir. 2020).....................................15, 30

*Kreuzfeld A.G. v. Carnehammar*,
　　138 F.R.D. 594 (S.D. Fla. 1991).......................................................................39

*Mills v. Elec. Auto-Lite Co.*,
　　396 U.S. 375 (1970)...........................................................................................29

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
　　339 U.S. 306 (1950)...........................................................................................42

*O'Kane v. JetBlue Airways Corp.*,
　　No. 7:19-cv-09662-KMK (S.D.N.Y.)......................................................5, 7, 9, 12

*Officers for Civ. Justice v. Civ. Serv. Comm'n of S.F.*,
　　688 F.2d 615 (9th Cir. 1982) ............................................................................32

*Poertner v. Gillette Co.*,
　　618 F. App'x 624 (11th Cir. 2015) ...................................................................24

*Raines v. State of Fla.*,
　　987 F. Supp. 1416 (N.D. Fla. 1997) ................................................................32

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
　　297 F.R.D. 683 (S.D. Fla. 2014).......................................................................24

*Salmons v. National Railroad Passenger Corp. (Amtrak)*,
   No. 1:19-cv-03253-CKK (D.D.C.) ............................................................5, 6, 9

*Shattenkirk v. Alaska Airlines, Inc.*,
   No. 2:19-cv-01656-HSG (W.D. Wash.) ................................................5, 7, 9, 12

*Swift v. BancorpSouth Bank*,
   No. 1:10-cv-00090-GRJ, 2016 WL 11529613
   (N.D. Fla. July 15, 2016) ................................................................22, 29, 30, 33

*Tefel v. Reno*,
   972 F. Supp. 608 (S.D. Fla. 1997) ......................................................................39

*Turner v. Gen. Elec. Co.*,
   No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275
   (M.D. Fla. Sept. 13, 2006) ...........................................................................21, 22

*Vallarta v. United Airlines*,
   No. 4:19-cv-05895 (N.D. Cal.) ............................................................5, 7, 9, 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................36

*Walco Invs., Inc. v. Thenen*,
   168 F.R.D. 315 (S.D. Fla. 1996) .........................................................................34

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ..........................................................................29

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ..........................................................................35

*Williams v. Wells Fargo Bank, N.A.*,
   280 F.R.D. 665 (S.D. Fla. 2012).................................................................*passim*

*Wilson v. EverBank*,
   No. 14-CIV-22264-BLOOM/VALLE, 2016 WL 457011
   (S.D. Fla. Feb. 3, 2016).......................................................................................26

*Zamber v. Am. Airlines, Inc.*,
   282 F. Supp. 3d 1289 (S.D. Fla. 2017) .............................................................6, 7

*Zamber v. Am. Airlines, Inc.*,
No. 1:16-cv-23901-JEM (S.D. Fla. Mar. 29, 2017) ....................................6, 7, 8

*Zamber v. American Airlines, Inc.*,
No. 4:20-cv-00114-O (N.D. Tex.), *appeal pending*, *Zamber v. Am.
Airlines, Inc.*, No. 20-10677 (5th Cir.) ..........................................................*passim*

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 23 ...........................................................................................................28
Rule 23(a)..............................................................................................34, 35, 41
Rule 23(a)(1)................................................................................................34
Rule 23(a)(2)................................................................................................35
Rule 23(a)(3)..........................................................................................37, 38
Rule 23(a)(4)..........................................................................................38, 40
Rule 23(b) ....................................................................................................41
Rule 23(b)(3).............................................................................................1, 41
Rule 23(c)(2)(B)...........................................................................................42
Rule 23(e).................................................................................................1, 22
Rule 23(e)(1)........................................................................................4, 22, 42
Rule 23(e)(1)(A) ............................................................................................4
Rule 23(e)(1)(B)...........................................................................................42
Rule 23(e)(1)(B)(i).........................................................................................4
Rule 23(e)(1)(B)(ii)........................................................................................4
Rule 23(e)(2)...................................................................................3, 22, 23, 27
Rule 23(e)(2)(A) ..........................................................................................27
Rule 23(e)(2)(B)...........................................................................................23
Rule 23(e)(2)(C)(i)........................................................................................25
Rule 23(e)(2)(C)(iii) .....................................................................................28
Rule 23(e)(2)(C)(iv)......................................................................................30
Rule 23(e)(2)(D)...........................................................................................30
Rule 23(e)(3).................................................................................................23
Rule 23(g) ....................................................................................................40

## SECONDARY AUTHORITIES

Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class
Actions: 2009–2013*, 92 N.Y.U. L. Rev. 937 (2017)..........................................29

Plaintiffs Bonnie Foshee, Milita Barbara Dolan, Walter Cappillo, Kristian Zamber, Andrea Durkee, David Lazar, Lisa Salmons, Madeleine F. Shattenkirk, and Randy O'Kane (collectively, "Plaintiffs"), pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, hereby move for entry of an Order: (1) directing notice of the pendency and proposed Settlement of this class action ("Settlement") between Plaintiffs and defendants Delta Airlines, Inc. ("Delta"), JetBlue Airways Corp. ("JetBlue"), American Airlines, Inc. ("American"), United Airlines, Inc. ("United"), Alaska Airlines, Inc. ("Alaska"), and National Railroad Passenger Corp. ("Amtrak") (collectively, "Defendants" and with Plaintiffs, "Parties"); (2) preliminarily approving the proposed Settlement and finding that the Court will likely certify the proposed Class under Rule 23(b)(3); and (3) scheduling a hearing for final approval of the Settlement. The Settlement is set forth in the Amended Stipulation of Class Action Settlement ("Settlement Agreement" or "Agreement"), as amended on October 21, 2020, attached as Exhibits 1 and 1A to the Declaration of Stuart A. Davidson in Support of Plaintiffs' Unopposed Motion to Direct Notice of Proposed Settlement to the Class ("Davidson Declaration" or "Davidson Decl."), filed herewith.

## I.    INTRODUCTION

Plaintiffs' counsel are pleased to present this proposed Settlement to this Court for preliminary approval. The proposed Settlement includes agreement to a

4837-1472-5072

$26 million non-reversionary common fund and injunctive relief requiring additional disclosures regarding the fact that Defendants receive compensation from AGA Service Company (d/b/a Allianz Global Assistance) ("AGA"), the insurance producer offering the trip insurance at issue for each of the Defendant travel companies.[1]    Through the Consolidated Amended Class Action Complaint ("Consolidated Complaint") filed on October 14, 2020 [ECF No. 31], the proposed Settlement brings together claims asserted in nine[2] separate cases involving travel insurance pending in Florida, California, New York, Washington, and the District of Columbia, and provides all Class Members[3] with the opportunity to obtain important monetary relief in the form of Cash Payments.

The Settlement is the result of years of often highly contentious litigation in several of the Actions, and many months of long, hard-fought, arm's-length

---

[1]    The Permanent Injunction will not require any disclosure on by AGA with respect to United, as AGA ceased offering travel insurance on United's website as of October 2017.

[2]    A total of ten similar suits were filed; nine are directly involved in the proposed Settlement, as explained more fully in the Settlement Agreement.  The tenth case – *Flores v. United Airlines*, No. 1:18-cv-06571 (N.D. Ill.) – is impacted by the Settlement pursuant to the Settlement Agreement, but will not be dismissed as a result of this proposed Settlement because plaintiff Flores asserts claims relating to another travel-insurance producer.

[3]    Unless otherwise defined, all capitalized terms herein are defined in the Parties' Settlement Agreement.

negotiations between the Parties and their counsel, with the assistance of a nationally recognized, experienced mediator, Rodney A. Max of Upchurch, Watson, White & Max Mediation Group, Inc. *See* Declaration of Rodney A. Max ("Max Decl."), Davidson Decl., Ex. 2. The Settlement is all the more positive considering that many of these cases received adverse rulings, such as orders granting dismissal or summary judgment (as discussed below), and while the cases still have pending motions to dismiss, motions for summary judgment, or appeals.

Plaintiffs' counsel are all well-positioned to evaluate and negotiate this Settlement because they have collectively been litigating these similar cases since 2016 and, during that time, have taken voluminous discovery, defended motions to dismiss and motions for summary judgment, and litigated motions for class certification. Despite that work, Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution, as demonstrated by the orders granting dismissal and summary judgment in several of these cases. In light of these significant hurdles, the Settlement is an excellent result because it puts money back into the hands of the Class.

Plaintiffs respectfully request the Court now take the first steps in the approval process, to which Defendants have stipulated and agreed, to: (1) evaluate the terms of the Settlement for likelihood of approval under Rule 23(e)(2), as recently

amended (*see* Fed. R. Civ. P. 23(e)(1)(B)(i)),[4] and the Eleventh Circuit's standards for procedural fairness and substantive adequacy; (2) evaluate the Settlement Class (defined below) for likelihood of certification under Rule 23(e)(1)(B)(ii); and (3) direct that notice of the proposed Settlement be sent to the Settlement Class under Rule 23(e)(1)(A). *See generally* Fed. R. Civ. P. 23(e)(1). As set forth below, the proposed Settlement easily satisfies these standards. If the Court directs notice to the Class, Class Members will be fully informed of their right to object or opt out of the Settlement Class and of the date set for a final Fairness Hearing.

Plaintiffs submit that the proposed Settlement is fair, reasonable, and adequate. Simply put, the Settlement represents a very good result and is in the best interests of the Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Proposed Settlement Concerns Claims Brought in Nine Separate Lawsuits Involving Six Travel Providers that Allowed the Same Insurance Provider, AGA, to Market Trip Insurance to Customers

This consolidated lawsuit is filed for settlement-purposes only and brings together claims asserted in complaints filed against the defendants in nine different Actions: *Foshee v. Delta Air Lines, Inc.*, No. 4:19-cv-00612-MW-MAF (N.D. Fla.); *Donoff v. Delta Air Lines, Inc.*, No. 9:18-cv-81258-DMM (S.D. Fla.), *appeal*

---

[4]    Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

*pending sub nom.*, *Cappillo v. Delta Air Lines, Inc.*, No. 20-10931 (11th Cir.); *Dolan v. JetBlue Airways Corp.*, No. 0:18-cv-62193-RS (S.D. Fla.); *Zamber v. American Airlines, Inc.*, No. 4:20-cv-00114-O (N.D. Tex.); *O'Kane v. JetBlue Airways Corp.*, No. 7:19-cv-09662-KMK (S.D.N.Y.); *Vallarta v. United Airlines*, No. 4:19-cv-05895-HSG (N.D. Cal.); *Shattenkirk v. Alaska Airlines, Inc.*, No. 2:19-cv-01656RSL (W.D. Wash.); *Durkee v. Alaska Airlines, Inc.*, No. 3:19-cv-1071-AJB-JLB (S.D. Cal.); and *Salmons v. National Railroad Passenger Corp. (Amtrak)*, No. 1:19-cv-03253-CKK (D.D.C.).

To effectuate a proposed Settlement, Plaintiffs are combining their claims from each of these separate Actions in a single Consolidated Complaint. Plaintiffs now assert claims under state consumer-protection laws and common-law claims against each of the Defendants for: (1) allegedly receiving undisclosed payments from AGA in connection with the sale of travel insurance policies to Defendants' customers; or (2) Defendants' alleged sale of its customer data to AGA in alleged violation of Defendants' privacy policies. *See generally* Consolidated Complaint. Plaintiffs generally allege that customers were left with the false impression that they were paying their entire insurance premiums only to AGA, and that Defendants were not being compensated from those transactions. Plaintiffs allege that Defendants were liable for failing to inform their customers that the price of the insurance product includes undisclosed payments that Defendants received from the insurance

producer, AGA, or that Defendants unlawfully sold their customers' data to AGA in violation of their privacy policies.  *Id.*

A common thread running through all of these cases is the allegation that Defendants were obligated but failed to disclose the fact of their receipt of compensation from AGA.  The most efficient way to resolve all of these cases is to resolve the claims together.

As more fully explained beginning on paragraph 4 of the Davidson Declaration, the Actions began with *Zamber* – originally filed in the Southern District of Florida in September 2016 – and the first Action to advance the foregoing theory of liability against an airline.  On March 29, 2017, Magistrate Judge Goodman filed a Report and Recommendation on Defendants' Motion to Dismiss ("R&R"), recommending that American's motion to dismiss be denied without prejudice.  *See Zamber v. Am. Airlines, Inc.*, No. 1:16-cv-23901-JEM (S.D. Fla. Mar. 29, 2017), ECF No. 65.  Thereafter, the district court entered an order affirming and adopting the R&R and allowing the case to proceed.  *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017).    Following Judge Goodman's decision, Mr. Zamber's counsel filed additional Actions in the Southern District of Florida in September 2018 against JetBlue (*Dolan*) and Delta (*Donoff*).  Another wave of cases was filed in 2019.  The *Durkee* and *Salmons* lawsuits were filed against new defendants, Alaska and Amtrak, while the remaining Actions were brought against

- 6 -

airlines already named in the prior litigation (*Foshee*, *O'Kane*, and *Shattenkirk* and against United (*Vallarta*)).

As a consequence of these varied procedural histories, these Actions are in different stages of development – some more advanced, while others less so – and Plaintiffs' claims have met varying degrees of success. A brief recitation of the history of these cases demonstrates why this proposed global Settlement is in the best interests of all Parties.

*Zamber*, the first-filed case, has the longest and most complex history. As discussed above, *Zamber* set the stage for many other lawsuits when the district court entered an order allowing the case to proceed based on the allegations upon which Mr. Zamber's legal theories were based. *Zamber*, 282 F. Supp. 3d at 1289. Following that order, and after voluminous discovery, settlement negotiations between the parties failed and, after Mr. Zamber failed to enforce a claimed settlement, American renewed its motion to transfer the case to the Northern District of Texas. While the transfer motion was pending, American filed a motion to dismiss, Mr. Zamber filed a motion for class certification, and both parties moved for summary judgment. On February 11, 2020, Judge Martinez entered an order transferring the case to the Northern District of Texas. *See Zamber*, ECF No. 474. On June 11, 2020, Judge O'Connor in the Northern District of Texas granted American's motion for summary judgment, entered final judgment for American,

- 7 -

and dismissed Mr. Zamber's case without prejudice.  *Id.*, ECF No. 544.  Mr. Zamber filed a notice of appeal with the U.S. Court of Appeals for the Fifth Circuit on June 30, 2020.  *Id.*, ECF No. 545.  In view of the potential Settlement, on October 28, 2020, the Fifth Circuit dismissed Mr. Zamber's appeal without prejudice to the right of either party to reinstate the appeal within 180 days.  *See Zamber v. Am. Airlines, Inc.*, No. 20-10677 (5th Cir. Oct. 28, 2020).

*Dolan* and *Donoff*, though filed on the same day, by the same counsel, and in the same district, have traveled very different paths.  In *Dolan*, Judge Scola entered an order granting in part, and denying in part, JetBlue's motion to dismiss the amended complaint.  *See Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338 (S.D. Fla. 2019).  Motions for class certification and summary judgment were pending, *Dolan*, ECF Nos. 89, 141, prior to a stay being entered.  In *Donoff*, Judge Middlebrooks dismissed Plaintiffs' Racketeer Influenced and Corrupt Organizations Act claim but denied Delta's motion to dismiss plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim and unjust enrichment claim not predicated on insurance law violations, while expressing "serious doubts about Plaintiffs' ability to ultimately ***prove***, rather than simply ***allege***, the unjust enrichment element of inequity and the FDUTPA element of deception." *Donoff*, ECF No. 121 at 19 (emphasis in original). Thereafter, on March 6, 2020, Judge Middlebrooks entered an order granting Delta's motion for summary judgment,

concluding: (1) monetary damages based upon the allegations of the complaint are barred by the filed-rate doctrine; (2) the activities complained of are also exempt from FDUTPA's coverage; (3) no deceptive act is demonstrated; (4) no proof of loss and actual damages is presented; and (5) unjust enrichment is unavailable under Florida law. *Donoff v. Delta Airlines, Inc.*, No. 18-81258-CV-MIDDLEBROOKS/ Brannon, 2020 WL 1226975 (S.D. Fla. Mar. 6, 2020). Plaintiff in *Donoff* filed a notice of appeal from the summary judgment order, *Donoff*, ECF No. 263, and the appeal remains pending. The Eleventh Circuit stayed briefing on the appeal pending Settlement approval.

The remaining six cases are all in relatively early stages, with only two orders on a motion to dismiss having been entered. *See Foshee*, ECF Nos. 12 (entering order extending deadline for plaintiff to respond to motion to dismiss), 30 (approving stipulation to file consolidated complaint and staying defendants' obligation to respond thereto); *Durkee*, ECF No. 24 (motion to dismiss filed and briefed, and order stating that the motion to dismiss will be determined on the papers and without oral argument); *Vallarta*, ECF Nos. 61, 64 (motion to dismiss plaintiff Salmons' claims granted; motion to dismiss plaintiff Vallarta's claims denied in part and, on reconsideration, granted in whole); *Shattenkirk*, ECF No. 34 (filing reply to response to motion to dismiss); *O'Kane*, ECF No. 24 (entering briefing schedule on motion to dismiss); *Salmons*, ECF Nos. 18-19, 24-25 (motion to dismiss fully briefed).

While plaintiffs assert some different theories in these new travel insurance cases, including here in *Foshee*, there is certainly no guarantee as to how those pending motions to dismiss will be decided.

### B.    The Parties Engage in Extensive Arms'-Length Settlement Negotiations

On Tuesday, October 15, 2019, mediator Rodney A. Max convened the first mediation session with parties in *Dolan*.  Max Decl., ¶11.  That session was extremely adversarial and ended with the parties extremely far apart.  *Id.*  Thereafter, a few months went by without any discussion about a possible settlement of the *Dolan* matter or any of the cases filed by Plaintiffs' counsel against other airlines. *Id.*, ¶12.  In late January 2020, counsel for Plaintiff in *Dolan*, as well as Plaintiffs in *Donoff* and *Foshee*, Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), and counsel for some of the defendants and their indemnitor, AGA, Lazaro Fernandez, Jr. of Stack Fernandez & Harris, P.A., contacted Mr. Max, to ascertain his availability for another mediation session to include *Dolan*, *Donoff*, *Zamber*,[5] and *Foshee*.  *Id.*, ¶13.

On Saturday, February 1, 2020, Mr. Max met with Messrs. Fernandez and Davidson to continue mediation efforts in Plantation, Florida to try to determine

---

[5]    Mr. Davidson had received the necessary settlement authority for plaintiff's counsel in *Zamber* to include the *Zamber* case in the negotiations.

whether there was enough common interest for continuing discussion directed to a potential global resolution of *Dolan*, *Donoff*, *Zamber*, and *Foshee*. *Id.*, ¶14. Although some progress as to a settlement framework had been made, mediation ended with the Parties still extremely far apart. *Id.* However, Messrs. Fernandez and Davidson agreed to continue talking on the phone and, if possible, meeting in person in New York City the following week when both would be there on other matters. *Id.*

Although Messrs. Fernandez and Davidson were unable to meet in New York City, they jointly requested another in-person mediation session. *Id.*, ¶15. Messrs. Fernandez and Davidson convened for another mediation session with Mr. Max on February 15, 2020, but were again unable to settle any of the cases. *Id.*, ¶16. Over the course of the next several days, Messrs. Fernandez and Davidson corresponded by email and held several telephone discussions, with and without the mediator's assistance, to try to reach an understanding on certain threshold points. *Id.*, ¶17. Eventually, on February 25, 2020, Messrs. Fernandez and Davidson's negotiation progressed and reached an important inflection point with positive prospects for global resolution of the claims alleged in as many as ten cases around the country involving the sale of AGA's Trip Insurance through different travel partners. *Id.*,

¶18.[6] Mr. Davidson and his co-counsel conveyed the progress of the negotiations to counsel for the plaintiffs in *Durkee*, *O'Kane*, *Vallarta*, *Shattenkirk*, *Flores*, and *Salmons*, who all agreed to participate in further settlement negotiations. *Id.*

On March 12, 2020, Mr. Max presided over another in-person mediation session involving counsel representing all Plaintiffs in the nine Actions and AGA, during which time those parties reached agreement on a potential global settlement structure to present to all parties that provided a foundation from which to build as the Parties continued to work toward a binding agreement for a global class action settlement. *Id.*, ¶19. Over the course of the following week, the Parties continued to negotiate the final details, and filed joint motions to stay or joint stipulations in all Actions pending a final agreement to effectuate a global class action settlement. The Parties subsequently finalized and executed an initial settlement agreement on May 29, 2020, and then the current Settlement Agreement on September 1, 2020, which was further amended on October 21, 2020. Davidson Decl., Exs. 1-1A.

Mr. Max attests that, during all of the mediation sessions and follow-up telephone conferences over which he presided, he never, at any point in time,

---

[6]    As explained in footnote 2, *supra*, one of the ten matters – *Flores* – will not be dismissed if this proposed Settlement is approved because Ms. Flores purchased travel insurance from a different insurance provider; however, should this Settlement be approved, the complaint in *Flores* will be amended to reflect that it no longer seeks relief on behalf of purchasers of AGA Trip Insurance.

witnessed or sensed any collusiveness between the Parties. Max Decl., ¶20-21. To the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length and, while professionally conducted, was quite adversarial. *Id.*, ¶21.

### C.    The Proposed Settlement Terms and Agreement

#### 1.    The Proposed Settlement Class

To facilitate the Settlement, all Plaintiffs agreed to seek a stay of their respective Actions and join in the filing of, and assert their claims in, the Consolidated Complaint in this Action. The Consolidated Complaint asserts state consumer protection law claims and nationwide common law claims against each of the Defendants on behalf of the following Class:

> All Persons living in the United States (including the 50 states, the District of Columbia, the U.S. Virgin Islands, and Puerto Rico) who, during the applicable Class Periods (below), purchased a travel insurance policy from AGA as part of AGA's business relationship with the Defendants: (i) through or on any Defendant's website; (ii) through or on any Defendant's mobile application; or (iii) through or on any of AGA's websites that are or were dedicated for any Defendant's customers or dedicated phone numbers for any Defendant's customers:

> (a)    **American:** September 12, 2012, through and including the date the Order Directing Notice is entered;

> (b)    **Delta:** September 17, 2014, through and including the date the Order Directing Notice is entered;

> (c)    **JetBlue:** September 17, 2014, through and including the date the Order Directing Notice is entered;

- 13 -

(d)    **United:** September 23, 2013 to September 30, 2017;

(e)    **Alaska:** June 7, 2015, through and including the date the Order Directing Notice is entered; and

(f)    **Amtrak:** October 29, 2016, through and including the date the Order Directing Notice is entered.

Excluded from this definition are: (a) Persons whose travel policies were canceled and received a refund of the purchase price; (b) Defendants, any parent, subsidiary, affiliate, or controlled Person by Defendants, as well as the officers, directors, agents, servants, and current and former employees of Defendants who were employed by Defendants at any time on or after the start of the Class Periods, and the immediate family members of such persons; (c) AGA, any parent, subsidiary, affiliate, or controlled Person by AGA, as well as the officers, directors, agents, servants, and current and former employees of AGA, and the immediate family members of such persons; (d) BCS Insurance Company ("BCS"), any parent, subsidiary, affiliate, or controlled Person by BCS, as well as the officers, directors, agents, servants, and current and former employees of BCS, and the immediate family members of such persons; (e) Jefferson Insurance Company ("Jefferson"), any parent, subsidiary, affiliate, or controlled Person by Jefferson, as well as the officers, directors, agents, servants, and current and former employees of Jefferson, and the immediate family members of such persons; (f) the presiding District Judge and Magistrate Judge in the Consolidated Action, and their staff, and their immediate

family members; and (g) all Class Members who timely and properly exclude themselves from the Settlement Class as provided in the Agreement.

### 2.    Monetary and Injunctive Relief

The Settlement Agreement affords members of the Settlement Class significant monetary and injunctive relief. The monetary relief provides a non-reversionary common fund against which Settlement Class Members can present claims tied to the amounts they paid for AGA's Trip Insurance.

Pursuant to the Settlement Agreement, if the Settlement is approved and reaches its Effective Date, AGA shall make an all-cash payment of $26 million in full and final settlement of the Consolidated Action, including all payments to Settlement Class Members, notice and administrative expenses, taxes and tax-related expenses, attorneys' fees and expenses, and service awards.[7] Settlement Class Members who do not opt out shall be given an opportunity to make a claim for Cash Payments of up to 15% of their Trip Insurance payment(s), subject to *pro rata*

---

[7]    The Parties are aware that a non-unanimous panel of the Eleventh Circuit recently issued an opinion holding that service awards in connection with class-action settlements are improper. *Johnson v. NPAS Sols., LLC*, No. 18-12344, 2020 WL 5553312, at *12 (11th Cir. 2020). An *en banc* petition is currently pending in *Johnson*. *See* Plaintiff-Appellee Charles T. Johnson's Petition for Rehearing En Banc, *Johnson v. NPAS Sols., LLC*, No. 18-12344 (11th Cir. Oct. 22, 2020). If the *en banc* petition is denied, or the Eleventh Circuit sitting *en banc* agrees with the panel's majority decision, Plaintiffs will no longer seek approval of the agreed-upon service awards as part of this Settlement. The Parties have executed an Amendment to the Settlement Agreement to that effect. *See* Davidson Decl., Ex. 1A.

reduction among claimants, if necessary, or *pro rata* supplemental payments if funds remain as described below.

The Settlement Fund will be non-reversionary. Thus, if the Settlement receives final approval, neither AGA nor any Defendant will have the ability to get back any of the settlement monies. Once notice and settlement administration costs, attorneys' fees and expenses, and any service awards have been paid, Cash Payments shall be distributed to the Authorized Claimants. Any remaining funds shall first be paid to Authorized Claimants in a subsequent distribution in the form of Supplemental Cash Payments such that their Cash Payments and Supplemental Cash Payments do not exceed 100% of the total amount they paid to AGA for Trip Insurance, and any remainder will be paid to the following *cy pres* recipient, subject to Court approval: Make-A-Wish Foundation of America, a *cy pres* recipient dedicated to create life-changing wishes for children with critical illnesses, the majority of which require airline travel. The notice and claims administration process will be conducted by an independent Settlement Administrator selected by proposed Lead Class Counsel and approved by the Court. Neither Defendants nor AGA will have any involvement in reviewing nor challenging claims, notwithstanding any assistance they may be required to provide.

AGA will wire to the Escrow Account the Settlement Amount no later than 14 calendar days after the Court's entry of the Order Directing Notice of the

proposed Settlement to the Class in the Consolidated Action.  Only notice and administrative costs (up to $600,000.00) (the Initial Costs Cap), and tax and tax-related expenses, shall be disbursed before the Effective Date.

In addition to monetary relief, the Settlement includes injunctive relief in the form of agreed-upon disclosures to address the failure-to-disclose alleged in the various Actions.  The Court's Final Order and Judgment in the Consolidated Action shall, as a Permanent Injunction, require the disclosure of the fact of AGA's compensation to the respective Defendants in connection with the marketing of travel insurance policies, which shall state to the effect that "AGA Service Company dba Allianz Global Assistance (AGA) compensates travel (including event) suppliers or agencies for allowing AGA to market or offer products to customers of the supplier or agency."  AGA shall make the compensation disclosure described herein in the same linked location as other disclosures on AGA's dedicated webpage for each product.  This Permanent Injunction shall apply as long as each Defendant's respective travel insurance program remains with AGA, unless there is a change in law, a regulator demand requiring different disclosures, or a change in the contractual relationship between AGA and the Defendant that makes the Permanent

Injunction moot.[8]  No later than 90 calendar days following the Effective Date of the Settlement, AGA shall make the negotiated and required disclosure as agreed.

### 3.    Release of Claims Against Defendants and AGA

In exchange for the relief provided by the proposed Settlement, members of the Class who do not opt out of the Settlement Class will release Defendants and AGA[9] against all claims that were or could have been brought in the Consolidated Action and each Action, including, but not limited to: (a) the transmission of Settlement Class Member personal information or data to AGA by Defendants in connection with insurance purchases; (b) the marketing, offering, solicitation, or sale of travel insurance through or on any Defendant's website, through or on any Defendant's mobile application, through or on AGA's websites that are or were dedicated for any Defendant's customers or dedicated phone numbers for any Defendant's customers; or (c) otherwise as part of AGA's business relationship with any of the Defendants, including any compensation paid to any Defendant.  Class

---

[8]  As previously noted, the Permanent Injunction will not require any disclosure by AGA with respect to United, as AGA ceased offering travel insurance on United's website as of October 2017.

[9]  As well as Defendants' counsel, AGA's underwriters, Jefferson and BCS, and all of their respective counsel, and, to the fullest extent permissible under law, each of their assignees, successors, predecessors, direct or indirect subsidiaries, direct or indirect parent companies, divisions, or affiliates, and all of their respective current and former officers, directors, controlled person(s), attorneys, employees, agents, servants, or underwriters.

Members will have the right to opt out of any release of liability referenced above by opting out of the Class, and will be provided with notice of their right to opt out.

### 4. Class Notice

Direct Notice of the Settlement and a link to a Claim Form will be sent by email to Class Members to the same email address provided to AGA in connection with their purchase of Trip Insurance. The Settlement Administrator will use the form of notice that is attached to the Settlement Agreement as Exhibits A-1 and A-2 (assuming they are approved by the Court). The Notice will explain how to opt out of the Settlement Class or object to any aspect of the Settlement. The Notice will provide a toll-free number to call for Settlement information. The Notice will also contain a provision directing Spanish-speaking Class Members to the Settlement website, which will include the relevant Settlement information in Spanish and a Spanish version of the Notice and Claim Form. The Notice will be emailed or direct-mailed no more than 60 calendar days after the Order Directing Notice is entered. The Settlement Administrator will also establish a Settlement website which will make available to Class Members all Settlement-related documents, and on which Settlement Class Members may download, print, e-sign, and upload, or complete a Claim Form. All costs of notice and Settlement administration shall be paid from the Settlement Fund.

### 5.    Claims Process

To receive a Settlement payment, Settlement Class Members will be required to submit a simple Claim Form on or before a deadline that will be 120 days after the Order Directing Notice.  The claims will be reviewed and approved by the Settlement Administrator, who will then make a determination of each Authorized Claimant's Settlement payment.  The Settlement Administrator will keep Lead Class Counsel and Defendants' Liaison Counsel apprised of the number of claims received, the number of Authorized Claimants, and the number of claims deemed invalid.  The Settlement Administrator will also send notices to any Settlement Class Members submitting deficient forms advising them of the deficiency.  Settlement Class Members will have up to 30 days after the claims deadline to cure any defective or incomplete Claim Form.  The Settlement contemplates that the Settlement Administrator shall distribute the settlement payments within 90 days after the Effective Date of the Settlement.

### 6.    Class Counsel's Attorneys' Fees and Expenses and Plaintiffs' Service Awards

Only after Plaintiffs, AGA, and each Defendant confirmed their agreement to the essential terms of the proposed Settlement did the Parties negotiate in good faith the reasonable amount of Class Counsel's attorneys' fees and expenses to be paid from the Settlement Fund, subject to Court approval.  The Parties agreed that Class

- 20 -

Counsel may seek an award of attorneys' fees in an amount not to exceed 26% of the Settlement Fund, and an award of litigation expenses not to exceed $700,000.00, subject to Court approval.  Any attorneys' fees and expenses awarded to Class Counsel shall be paid upon the Effective Date.

Further, only to the extent consistent with existing precedent in this Circuit, Plaintiffs in the Consolidated Action are permitted by the Settlement to seek Court approval of Service Awards as compensation for each Plaintiff's efforts in pursuing their Action on behalf of the Settlement Class in the amount of no more than $7,500.00 for Plaintiffs who sat for deposition, $5,000.00 for Plaintiffs who did not sit for deposition, and $1,000.00 for Plaintiffs first named in the Consolidated Complaint.  Any Service Award ordered by the Court, if permitted, shall be paid from the Settlement Fund within 30 calendar days after the Settlement's Effective Date.  However, Plaintiffs' agreement to the Settlement is not in any way conditioned on the ability to seek or obtain Service Awards.

## III.    ARGUMENT

### A.    The Proposed Settlement Warrants Providing Notice to the Class

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve

- 21 -

the speedy resolution of justice." *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006).[10]  For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits."  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Swift v. BancorpSouth Bank*, No. 1:10-cv-00090-GRJ, 2016 WL 11529613, at *6 (N.D. Fla. July 15, 2016) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements.").

Rule 23(e) requires judicial approval for a settlement of claims brought as a class action ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). Under Rule 23(e)(1), as recently amended, the issue at this stage is whether the Court should direct notice of the proposed Settlement to the Class, which it should do after first determining that it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

---

[10]   *See also Exum v. Nat'l Tire & Battery*, No. 9:19-cv-80121-Matthewman, 2020 WL 5217060, at *6 (S.D. Fla. Sept. 1, 2020) ("The purpose behind class actions is to eliminate the potential for repetitious litigation and provide small claimants a means of obtaining redress for claims too small to justify individual litigation.  By the same token, settlement is a means by which both sides – who are well aware of the weaknesses in their respective cases – may avoid the uncertainty of litigation, which is oftentimes a zero-sum game.  If Plaintiffs elected not to settle, there is a possibility they may have lost in federal court.").

- 22 -

**Approval of the Proposal.** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

　　　　(i) the costs, risks, and delay of trial and appeal;

　　　　(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

　　　　(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

　　　　(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Applying this standard, this Court should grant preliminary approval of the proposed Settlement and direct that notice be provided to Class Members.

## 1.    The Proposed Settlement Is Procedurally Fair

The Rule 23(e)(2)(B) factor is a procedural one – whether the settlement "was negotiated at arm's length." *See Fla. Educ. Ass'n v. Dep't of Educ.*, 447 F. Supp. 3d 1269, 1275 (N.D. Fla. 2020) ("[A]pproval should be given so long as the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011) (at the preliminary-approval stage, district courts consider whether the

proposed settlement appears to be "the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel and was not the result of collusion.").

The Settlement terms in this case are the product of significant give and take by the Parties and were negotiated at arm's length. The parties participated in multiple mediation sessions with Rodney A. Max, a well-respected mediator with significant experience resolving complex suits. *See generally* Max Decl. The very fact of Mr. Max's involvement in the negotiations culminating in the Settlement weighs in favor of preliminary approval. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (concluding that a settlement achieved only after engaging in extensive arm's-length negotiations moderated by an experienced mediator belies any suggestion of collusion); *Fla. Educ. Ass'n*, 447 F. Supp. 3d at 1276 ("The Court finds there is no evidence of collusion. The settlement is the product of arms-length negotiations by experienced counsel with the assistance of an experienced mediator after years of hard-fought litigation."); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("The Court finds that the settlement is not the product of collusion. The parties worked extensively with a mediator, Rodney Max. They participated in three in-person sessions as well as numerous telephone and email communications. The mediator was involved in all steps in the process. Further, this case was intensively litigated.

- 24 -

Defendants filed numerous dispositive motions that could have completely absolved themselves of liability throughout the time that this case has been active. It is clear that the negotiations between the parties proceeded at arms' length.").

The Parties' extensive negotiations were also informed by considerable discovery conducted in several of the nine Actions, three of which had advanced to the summary-judgment and/or class-certification stages. Settlement Agreement at 2-4, Davidson Decl., Ex. 1. All told, Plaintiffs' counsel reviewed tens of thousands of pages of documents as part of these Actions. Davidson Decl., ¶¶13, 25. These facts demonstrate that Plaintiffs' counsel were fully informed of the facts, legal issues, and risks prior to entering into the Settlement.

### 2.    The Proposed Settlement Is Substantively Adequate

The Rule 23(e)(2)(C)(i) factor (adequacy of relief, taking into account the "costs, risks, and delay of trial and appeal"), is also readily satisfied.

Concerning the merits of the case and risks absent settlement, the Parties recognized that continued litigation through trial – and likely appeals (including two already pending) – posed significant risks that made any result in favor of Class Members uncertain. The difficulties of proof were substantial, as evidenced by Judge Middlebrooks granting summary judgment in Delta's favor in *Donoff*, which is on direct appeal, and Judge O'Connor granting summary judgment in American's favor in *Zamber*.

Further, all Defendants would or already have argued that class certification was unwarranted on Plaintiffs' claims. Delta defeated class certification in *Donoff* while a motion for class certification was fully briefed in *Dolan* before the case was administratively closed to facilitate settlement.

Plaintiffs would have to prevail on all class certification issues, at trial on the merits, and on appeal in their respective Actions. Thus, there were very significant and real risks to the continued prosecution of the Actions. Without settlement, the length of time and the expense required to resolve all of these issues would be considerable, and the return for the Settlement Class would be uncertain. *See Wilson v. EverBank*, No. 14-CIV-22264-BLOOM/VALLE, 2016 WL 457011, at *8 (S.D. Fla. Feb. 3, 2016) ("Plaintiffs might have recovered nothing for themselves or the class had they proceeded with litigation. Plaintiffs would have faced motions for class certification and for summary judgment, and possibly a lengthy trial and an appeal. Claims based on similar facts and the same or legal theories as those advanced here have met with mixed results in courts across the country, on both dispositive motions and class certification.").

### 3. The Remaining Amended Rule 23(e)(2) Factors Are Also Met

#### a. Plaintiffs and Their Counsel Have Adequately Represented the Settlement Class

Plaintiffs and their counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting the Actions, including, among other things, researching and drafting complaints, opposing motions to dismiss, obtaining, reviewing, and analyzing tens of thousands of pages of documents, deposing numerous witnesses and Rule 30(b)(6) designees, defending several Plaintiffs' depositions, briefing class certification and motions for summary judgment in three of the Actions, and engaging in numerous full-day mediation sessions, resulting in a positive outcome for the Settlement Class.

Moreover, counsel for the various plaintiffs have extensive experience litigating class actions, and they are well-versed in assessing the risk of continued litigation in the context of a proposed settlement. Counsel in the early wave of cases have committed years of work and thousands of hours litigating the respective actions, thereby easily demonstrating their adequacy.

#### b. The Proposed Method for Distributing Relief Is Effective

As explained above, the Notice process and the process for obtaining Settlement payments is effective. Class Members will receive Notice by email at the same email address which AGA uses to communicate with them regarding the

Trip Insurance purchase. Any email bounce-backs will result in the Settlement Administrator, Gilardi & Co. LLC, sending a postcard notice by First Class Mail. The Settlement Administrator is confident that Notice will reach 90% of Class Members, which is in excess of the reach required to satisfy Rule 23 and due process. *See* Declaration of Carla A. Peak in Support of Settlement Notice Plan, ¶19, Davidson Decl., Ex. 3.

Settlement Class Members will be able to complete a simple online Claim Form or download, print, and mail a Claim Form to the Settlement Administrator. All Authorized Claimants will be paid either through PayPal, Amazon, or check. Settlement payments will be distributed within 90 calendar days of the Settlement's Effective Date, with the potential for supplemental distributions.

### c.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed above (at §II.C.6.), Class Counsel intend to seek Court approval of attorneys' fees in the amount of up to 26% of the Settlement Fund. As referenced *supra*, if approved, this fee request will be in line with fee awards in other settlements approved in this Circuit, and with the Supreme Court's "common benefit" jurisprudence. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("The [common benefit] doctrine rests on the perception that persons who obtain the

- 28 -

benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.") (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970)); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771, 774 (11th Cir. 1991) (holding, "[a]ttorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval[,]" and noting, "[t]he majority of common fund fee awards fall between 20% to 30%."); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30%);[11] *see also In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *17 (S.D. Fla. Aug. 10, 2020) (awarding class counsel attorneys' fees of 35% of common fund); *Swift*, 2016 WL 11529613, at *13 (awarding class counsel 35% of settlement fund).[12]  Moreover, both the timing and amount of attorneys' fees will be tied ***directly*** to the timing and amount of cash available to the Settlement Class.

---

[11]  A recent empirical study of class action fees from 2009 through 2013 found that, in the Eleventh Circuit, the average fee was 30% and median fee was 33%. Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. L. REV. 937, 947, 951 (2017).

[12]  Most recently, Judge Hinkle noted that "[t]he benchmark for common fund recoveries is 25% of the fund."  *Fla. Educ. Ass'n*, 447 F. Supp. 3d at 1279.

Finally, as explained in the Notice, and **only** to the extent consistent with existing precedent in this Circuit, *see supra* n.6, Plaintiffs are permitted under the Settlement to request modest Service Awards in connection with their representation of the Settlement Class. *See, e.g.*, *Fla. Educ. Ass'n*, 447 F. Supp. 3d at 1278 ("The Court finds that the service payments to the [seven] individual Plaintiffs [of $10,000 each] are fair and reasonable and should be approved."); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *9 (S.D. Fla. May 24, 2019) (approving "$10,000 Incentive Award to Plaintiff for his role as Class Representative"); *Swift*, 2016 WL 11529613, at *13 ("[T]he Court approves the requested Service Award of $10,000 for Plaintiff Shane Swift, to be paid from the Settlement Fund.").

### d.    The Parties Have No Other Agreements

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement. Other than the Amendment to address the *Johnson* decision, the Parties have not entered into any other or supplemental agreement in connection with this Settlement.

### 4.    Settlement Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether Settlement Class Members are treated equitably. As reflected in the Settlement Agreement, the Settlement treats Settlement Class Members equitably relative to each other, based

on the specific amounts paid for Trip Insurance.  Each and every Settlement Class Member is treated the same.

**B.    The Proposed Settlement Will Likely Receive Final Court Approval**

As a result of this mediation process, the Settlement provides considerable monetary and injunctive relief to the Settlement Class, and is likely to receive the Court's final approval.

**1.    Monetary Relief**

As explained above, the Settlement Agreement provides monetary benefits that would not be available absent the proposed Settlement.  All Settlement Class Members who purchased AGA's Trip Insurance are eligible to receive Cash Payments of up to 15% of their Trip Insurance purchases from the $26 million Settlement Fund, subject to *pro rata* reduction, if any.  And, if there is a residue in the Net Settlement Fund after payment of all Cash Payments, notice and administrative expenses, taxes and tax-related expenses, and any Court-awarded attorneys' fees, expenses, and service awards, Authorized Claimants will be eligible to receive Supplemental Cash Payments such that their Cash Payment and Supplemental Cash Payments do not exceed 100% of the total amount they paid to AGA for Trip Insurance, which will be distributed *pro rata*.

4837-1472-5072

### 2.    Injunctive Relief

Within 90 days from the Effective Date of the Settlement, the Final Order and Judgment will also require the inclusion of a disclosure that AGA compensates Defendants in connection with the marketing of the Trip Insurance, stating to the effect that "AGA Service Company dba Allianz Global Assistance (AGA) compensates travel (including event) suppliers or agencies for allowing AGA to market or offer products to customers of the supplier or agency." This means that consumers will now have additional written information available to them when deciding whether to purchase trip insurance via offers featured on a travel supplier's website. Because this injunctive relief addresses the alleged lack of disclosure of AGA and Defendants' financial arrangement that lies at the heart of this litigation, this result is likely to receive this Court's final approval.

### C.    The Proposed Settlement Saves Plaintiffs and the Settlement Class from Considerable Litigation Hurdles

Any evaluation of the Settlement benefits must be tempered by the recognition that any compromise involves concessions by the Parties. *See Raines v. State of Fla.*, 987 F. Supp. 1416, 1418 (N.D. Fla. 1997) ("[I]n considering the fairness of a proposed settlement of a class action, the court must remember that compromise is the essence of settlement. A just result is often no more than an arbitrary point between competing notions of reasonableness."). Indeed, "the very essence of a

settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Civ. Justice v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (Eleventh Circuit's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."). Had litigation continued in the Actions, Plaintiffs and Settlement Class Members would have risked not prevailing on their claims and receiving no recovery at all. As explained above, this risk was not just theoretical. Indeed, "but for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery." *Swift*, 2016 WL 11529613, at *10 (quoting *Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1347-48).

### D.  Proposed Class Counsel Believe the Settlement Is Reasonable

Significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class. *See Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983) ("Courts often accord great weight to the opinions of counsel for the class in approving class action settlements."); *Swift*, 2016 WL 11529613, at *12 ("The Court gives great weight to the recommendations

of counsel for the parties, given their considerable experience in this type of litigation.").

Counsel here, many of whom have litigated these Actions over the course of almost five years, fully support the Settlement. In addition, the law firms that have litigated all of the Actions are some of the most experienced firms in class action litigation. Based on this experience, it is proposed Class Counsel's informed opinion that, given the uncertainty and expense of pursuing these claims through trial, the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

### E.    The Court Should Certify the Proposed Class

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011) (brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

### 1.    The Class Meets the Four Requirements of Rule 23(a)

Plaintiffs seek class certification for settlement purposes only. Under such circumstances, the policies underlying the class-action rule dictate that Rule 23(a)

- 34 -

should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Plaintiffs satisfy all four requirements of Rule 23(a) as set forth below.

### a.    The Class Is Sufficiently Numerous

Rule 23(a)(1) requires plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "While there is no fixed rule, generally a class size [of] less than twenty-one is inadequate, while a class size of more than forty is adequate." *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012); *see also Anderson v. Bank of S., N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987). "[The] size of the class and geographic location of the would-be class members are relevant to any consideration of practicality." *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 WL 12877718, at *5 (S.D. Fla. May 16, 2012). The proposed class in this case, which includes millions of consumers nationwide, well exceeds the minimum threshold. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Numerosity is satisfied.

### b.    Questions of Law and Fact Are Common to All Class Members

Rule 23(a)(2) requires plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). The "commonality" requirement

of Rule 23(a)(2) is a "low hurdle" easily surmounted. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Commonality requires a showing that the class members' claims "depend upon a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do," *id.* at 359 (brackets in original), and "where a 'common scheme of deceptive conduct' has been alleged, the commonality requirement should be satisfied." *Checking Acct. Overdraft Litig.*, 2012 WL 12877718, at *5 (quoting *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 618 (M.D. Fla. 2006)).

Plaintiffs' claims here depend on the common contention that Defendants, all of whom contract or contracted with AGA to allow AGA to offer Trip Insurance to Defendants' customers, are liable under state statutory and common laws by giving consumers the false impression that they were purchasing the insurance product from AGA with a "pass-through" fee and that the Defendant was not compensated by AGA. Plaintiffs allege that all Defendants are liable for failing to inform their customers that the price of the Trip Insurance product includes undisclosed payments Defendants received from third-party AGA or that Defendants were otherwise paid by AGA for selling customers' data in violation of their privacy policies. Further, all members of the Class were allegedly injured in the same manner: they were allegedly charged by AGA for Trip Insurance without any

- 36 -

disclosure of AGA's payments to Defendants, or Defendants allegedly improperly sold Plaintiffs' data for profit. *See, e.g.*, *Williams*, 280 F.R.D. at 672 (finding commonality where "all members of the proposed class were injured in the same manner").

Thus, while only one question of law or fact is required, several common questions capable of class-wide resolution are alleged here, including: (1) whether Defendants received payments or other remuneration in connection with AGA's sale of Trip Insurance products to Defendants' passengers; (2) whether Defendants' receipt of payments in connection with AGA's sale of Trip Insurance products to Defendants' passengers constituted a breach of Defendants' common-law duties; (3) whether Defendants' receipt of such payments would constitute a deceptive or unfair business practice under state consumer protection laws; and (4) the nature and scope of the remedy available to Plaintiffs and other similarly situated consumers. These questions satisfy commonality. *See, e.g.*, *id.* at 672 ("The determination of the truth or falsity of the Plaintiffs' allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke."). Therefore, common questions – when viewed through the lens of a settlement-purpose only certification – are sufficient.

### c.    Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires plaintiffs to demonstrate that their claims are typical of those held by the proposed class.  Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiffs' claims in relation to the class.  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 n.23 (S.D. Fla. 2004); "'A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).'"  *Baker v. Thrasher Law Firm*, No. 4:12-cv-00630-MW/CAS, 2013 WL 12119572, at *2 (N.D. Fla. June 10, 2013) (Walker, J.) (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008)).  "Any atypicality or conflict between the named Plaintiffs' claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy."  *Cheney v. CyberGuard Corp.*, 213 F.R.D. 484, 491 (S.D. Fla. 2003).[13]

Plaintiffs' claims in this Consolidated Action arise from the same alleged course of conduct and are based on the same asserted legal theories as those brought

---

[13] Even in cases where one proposed class representative may be atypical or inadequate, the Eleventh Circuit permits other plaintiffs to step in as class representative. *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1342 (11th Cir. 2003); *Cotterall v. Paul*, 755 F.2d 777, 781 (11th Cir. 1985).

on behalf of the proposed Class.  Plaintiffs were allegedly exposed to the same
challenged course of conduct and claimed to have suffered the same economic harm
from AGA's allegedly undisclosed payments to Defendants.  Plaintiffs and the Class
sought redress through common claims.

### d.    Plaintiffs and Their Counsel Are Adequate Representatives

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately
represent the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is
satisfied when the class representatives have: (1) no interests antagonistic to the rest
of the class; and (2) counsel who are "qualified, experienced, and generally able to
conduct the proposed litigation."  *Cheney*, 213 F.R.D. at 495; *see also Baker*, 2013
WL 12119572, at *2 ("This adequacy-of-representation requirement asks 'whether
any substantial conflicts of interest exist between the representatives and the class.'")
(quoting *Busby*, 513 F.3d at 1323).  "Adequate representation is presumed in the
absence of contrary evidence."  *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211
F.R.D. 457, 464 (S.D. Fla. 2002).

### (1)    Plaintiffs Do Not Have Interests Antagonistic to Class Members

Adequacy exists where a class representative shares common interests with
the class and seeks the same type of relief for herself and the settlement class
members.  *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997); *Kreuzfeld A.G.*

*v. Carnehammar*, 138 F.R.D. 594, 600 (S.D. Fla. 1991).  Here, Plaintiffs have no interest antagonistic to those held by the Settlement Class. The Class definition includes only those who purchased Trip Insurance policies from AGA.  All Class Members were not told that Defendants allegedly received payment from the sale of the Trip Insurance policies, or that AGA allegedly paid Defendants in connection with the transmission of customer data.  Thus, the issues in this case are common issues.  Plaintiffs and absent Class Members share a common goal: to recover the portions of the amounts charged for Trip Insurance paid to Defendants, or the amounts Defendants allegedly earned in connection with the transmission of customer data.  Plaintiffs have satisfied Rule 23(a)(4).  *See Williams*, 280 F.R.D. at 673-74.

### (2)    Proposed Class Counsel Are Highly Qualified and Experienced and Should Be Appointed Under Rule 23(g)

The attorneys who seek to represent the Class in this case are highly qualified to serve as Class Counsel under Rule 23(g), many of whom have been litigating Trip Insurance-related claims for nearly four years, and have served as lead and co-lead counsel in some of the largest class actions in the country, including insurance-related complex cases.  *See* Attorney Biographies and Curriculum Vitarum, Davidson Decl., Exs. 4-11.  The lawyers that Plaintiffs seek to be appointed Lead Class Counsel in connection with the Settlement are: Stuart A. Davidson of Robbins

Geller and Scott B. Cosgrove of Léon Cosgrove, LLP.  The lawyers that Plaintiffs seek to be appointed as additional Class Counsel in connection with the Settlement are: Alec Schultz of Léon Cosgrove, LLP; Adam M. Moskowitz of The Moskowitz Law Firm; Francis J. Balint, Jr. of Bonnett Fairbourn Friedman & Balint PC; Rosemary M. Rivas of Levi & Korsinsky LLP; Barry S. Kantrowitz of Kantrowitz, Goldhamer & Graifman, P.C.; Randall Ewing of Korein Tillery LLP, and Kevin Sylvan Landau of Taus, Cebulash & Landau, LLP.  These lawyers have successfully prosecuted consumer class actions for decades, and are well respected in the communities that they serve.  *Id.*

### 2.    The Class Meets the Requirements of Rule 23(b)(3)

In addition to meeting the four requirements of Rule 23(a), plaintiffs seeking class certification must satisfy one subsection of Rule 23(b).  *Cheney*, 213 F.R.D. at 489.   Plaintiffs here seeks certification for settlement-purposes only under Rule 23(b)(3), under which certification is appropriate if: (1) common questions of law or fact predominate over those affecting only individual class members; and (2) class treatment is superior to other adjudication methods.  The latter question implicates manageability concerns, which do not bear on certification of a settlement class.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (*en banc*) (holding, "[a] class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that

would make a trial unmanageable"); *see also Checking Acct. Overdraft Litig.*, 275 F.R.D. at 659.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] alleged scheme" that allegedly created a false impression that the entirety of the Class' Trip Insurance purchases were passed-through to AGA. *Checking Acct. Overdraft Litig.*, 2012 WL 12877718, at *8. Proof of misconduct is shown by evidence that is the same regardless of class composition. Common issues would predominate over any individual issue.

Moreover, a comprehensive resolution of the Class Members' claims in this Consolidated Action would be far superior to litigating each of their claims separately. "Since the damage amounts allegedly owed to each individual [purchaser] are relatively low – especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-level business transactions between sophisticated [d]efendants – the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams*, 280 F.R.D. at 675. Accordingly, the Court should certify the proposed Class for settlement purposes only.

### F.    The Court Should Approve the Proposed Class Notice

Rule 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Class notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Amended Rule 23(c)(2)(B) allows notice to be sent by "electronic means." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs' proposed Notice Plan readily meets this standard. The Settlement Agreement provides that the Settlement Administrator shall distribute the Notice and Claim Form by email in the forms attached as Exhibits A-1, A-2, and A-3 to the Settlement Agreement to all identifiable Class Members within 60 calendar days of the Order Directing Notice. The Settlement also allows Settlement Class Members to submit Claim Forms online.

The Notice itself also satisfies the requirements of the Federal Rules of Civil Procedure. It provides, among other things: (1) a clear definition of the Settlement Class; (2) a description of the Consolidated Action and the material terms of the Settlement; (3) instructions as to how Settlement Class Members may make a claim; (4) an explanation of objection and opt-out rights and a date by which Class Members may opt out, and information regarding how to do so; (5) instructions as

- 43 -

to how to object to the Settlement and an objection deadline; (6) the date on which the Court will hold a Fairness Hearing; and (7) the internet address and toll-free number from which Class Members may obtain additional information about the Settlement and its terms. The Claim Form and instructions also provide clear and comprehensive instructions as to who is eligible for relief and how to make a claim.

### G. The Court Should Schedule a Fairness Hearing

Should the Court grant this motion, following notice and the opportunity for Class Members to opt-out, Plaintiffs will file their motion for final approval of the Settlement and motion for an award of attorneys' fees and expenses, and service awards on a date set by the Court, which Plaintiffs submit should be 35 days prior to the Fairness Hearing. Plaintiffs request that the Court schedule the Fairness Hearing no less than 150 days after entry of the Order Directing Notice.

## IV.  CONCLUSION

The Court should enter an Order directing notice of the proposed Settlement to the Class, granting preliminary approval of the Settlement, certifying the proposed Class for settlement purposes, scheduling a Fairness Hearing, and granting such other and further relief as the Court seems just and proper.

- 44 -

## V.    LOCAL RULE 7.1(B) CERTIFICATION

Pursuant to N.D. Fla. L.R. 7.1(B), undersigned counsel hereby certifies that they communicated in good faith with counsel for Defendants regarding the relief requested in this Motion, and Defendants do not oppose this Motion.

## VI.    LOCAL RULE 7.1(F) WORD COUNT CERTIFICATE

On October 15, 2020, this Court entered an Order granting Plaintiffs up to 11,000 words for this Motion.  *See* ECF No. 33.  Accordingly, pursuant to N.D. Fla. L.R. 7.1(F), undersigned counsel hereby certifies that the foregoing contains 10,105 words.

4837-1472-5072

Dated:  November 3, 2020

ROBBINS GELLER RUDMAN
   & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 84824
CHRISTOPHER C. GOLD
Florida Bar No. 088733
BRADLEY M. BEALL
Florida Bar No. 1010635

*s/ Stuart A. Davidson*
Stuart A. Davidson

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/760-3000
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com
bbeall@rgrdlaw.com

LEÓN COSGROVE, LLP
SCOTT B. COSGROVE
Florida Bar No. 161365
ALEC H. SCHULTZ
Florida Bar No. 35022
JOHN R. BYRNE
Florida Bar No. 126294
JEREMY L. KAHN
Florida Bar No. 105277
255 Alhambra Circle, Suite 800
Coral Gables, FL  33134
Telephone:  305/740-1975
scosgrove@leoncosgrove.com
aschultz@leoncosgrove.com
jbyrne@leoncosgrove.com
jkahn@leoncosgrove.com

*Counsel for Plaintiffs and Proposed Lead*
*Class Counsel*

LEVI & KORSINSKY LLP
ROSEMARY M. RIVAS*
388 Market Street, Suite 1300
San Francisco, CA  94111
Telephone:  415/373-1671
rrivas@zlk.com

TAUS, CEBULASH
   & LANDAU, LLP
KEVIN SYLVAN LANDAU*
80 Maiden Lane, Suite 1204
New York, NY  10038
Telephone:  212/931-0704
klandau@tcllaw.com

KANTROWITZ, GOLDHAMER
   & GRAIFMAN, P.C.
BARRY S. KANTROWITZ
Florida Bar No. 0602752
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY  10977
Telephone:  845/356-2570
bkantrowitz@kgglaw.com

THE MOSKOWITZ LAW FIRM
ADAM M. MOSKOWITZ
Florida Bar No. 984280
2 Alhambra Plaza, Suite 601
Coral Gables, FL  33134
Telephone:  305/740-1423
adam@moskowitz-law.com

KOREIN TILLERY LLP
RANDALL EWING JR.*
205 North Michigan Avenue, Suite 1950
Chicago, IL  60601
Telephone:  312/641-9750
rewing@koreintillery.com

4837-1472-5072

BONNETT FAIRBOURN FRIEDMAN
  & BALINT, PC
FRANCIS J. BALINT, JR.*
2325 East Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
fbalint@bffb.com

*Counsel for Plaintiffs and Proposed
Additional Class Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR*
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
tedp@rgrdlaw.com

WITES LAW FIRM
MARC A. WITES
Florida Bar No. 24783
4400 North Federal Highway
Lighthouse Point, FL  33064
Telephone:  954/933-4400
mwites@witeslaw.com

GLANCY PRONGAY &
  MURRAY
MARC L. GODINO*
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
mgodino@glancylaw.com

- 48 -

GUSTAFSON GLUEK PLLC
DANIEL C. HEDLUND*
120 South 6th Street
Minneapolis, MN  55401
Telephone:  612/333-8844
dhedlund@gustafsongluek.com

*Additional Counsel for Plaintiffs*

\* *Pro hac vice* forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 3, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Stuart A. Davidson*
STUART A. DAVIDSON

ROBBINS GELLER RUDMAN
  & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

E-mail:  sdavidson@rgrdlaw.com

4837-1472-5072