UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

TALLAHASSEE DIVISION

| | | |
|---|---|---|
| BONNIE FOSHEE, MILITA BARBARA DOLAN, WALTER CAPPILLO, KRISTIAN ZAMBER, ANDREA DURKEE, DAVID LAZAR, LISA SALMONS, MADELEINE F. SHATTENKIRK, and RANDY O'KANE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) | No. 4:19-cv-00612-MW-MAF <br><br> <u>CLASS ACTION</u> <br><br> PLAINTIFFS' RESPONSE TO SUPPLEMENTAL ORDER SEEKING CLARIFICATION |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| DELTA AIR LINES, INC., JETBLUE AIRWAYS CORPORATION, AMERICAN AIRLINES, INC., UNITED AIRLINES, INC., ALASKA AIRLINES, INC., and NATIONAL RAILROAD PASSENGER CORP d/b/a AMTRAK, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

**PAGE**

A.    The Motion for Attorneys' Fees and Long-Form Notice ...................... 1

B.    Enforcement of the Settlement and Injunction as to AGA ................... 2

C.    Fairness of the Monetary Relief ............................................................ 5

    1.    Plaintiffs' Damages Theories ....................................................... 5

    2.    Value of Plaintiffs' Damages Theories (Range of
        Possible Recovery) ....................................................................... 8

    3.    Total Number of Class Members ............................................... 10

    4.    Comparison of $26 Million Recovery to Total
        Hypothetical Value of Plaintiffs' Damages Theories .............. 10

    5.    Potential Per-Class-Member Recovery ..................................... 13

4852-1086-3317

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE**

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).........12, 13

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) .............................................................................12

*Braynen v. Nationstar Mortg., LLC*,
   No. 14-CV-20726-GOODMAN,
   2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) .....................................................13

*Dan River Inc v. Crown Crafts, Inc.*,
   No. 98-CIV. 3178 LMM AJP, 1999 WL 287327 (S.D.N.Y. May 7, 1999).......14

*Donoff v. Delta Air Lines, Inc.*,
   No. 18-81258-CV-MIDDLEBROOKS, 2020 WL 3268272
   (S.D. Fla. Jan. 24, 2020) ......................................................................................9

*Donoff v. Delta Air Lines, Inc.*,
   No. 18-81258-CV-MIDDLEBROOKS/Brannon, 2020 WL 1226975
   (S.D. Fla. Mar. 6, 2020) .......................................................................................8

*F.T.C. v. Leshin*,
   618 F.3d 1221 (11th Cir. 2010) ............................................................................3

*Fla. Educ. Ass'n v. Dep't of Educ.*,
   447 F. Supp. 3d 1269 (N.D. Fla. 2020) ..............................................................13

*Fla. Educ. Ass'n v. Dep't of Educ.*,
   No. 4-17-cv-414-RH/CAS, 2019 WL 8272779 (N.D. Fla. Nov. 4, 2019).........13

*Flores v. United Airlines*,
   426 F. Supp. 3d 520 (N.D. Ill. 2019)....................................................................8

*Grant v. Ocwen Loan Servicing, LLC*,
   No. 315CV01376J34PDB, 2019 WL 367648 (M.D. Fla. Jan. 30, 2019) ...........7

*Hall v. Bank of Am., N.A.*,
   No. 1:12-cv-22700-FAM, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014)..........15

4852-1086-3317

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ................................................................9

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012)...............................................11

*In re Soderstrom*,
  477 B.R. 249 (Bankr. M.D. Fla. 2012)................................................12

*Johnson v. NPAS Sols., LLC*,
  975 F.3d 1244 (11th Cir. 2020) ..........................................................16

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................9, 11

*Mahoney v. TT of Pine Ridge, Inc.*,
  No. 17-80029-CIV-MIDDLEBROOKS, 2017 WL 9472860
  (S.D. Fla. Nov. 20, 2017).....................................................................13

*Metex Mfg. Corp. v. Manson*,
  No. 05-2948 (HAA), 2009 WL 10729008 (D.N.J. July 9, 2009).........4

*Montoya v. PNC Bank, N.A.*,
  No. 14-20474-CIV-GOODMAN, 2016 WL 1529902
  (S.D. Fla. Apr. 13, 2016) .....................................................................15

*Morgan v. Pub. Storage*,
  No. 1:14-cv-21559-UU, 2015 WL 11233111 (S.D. Fla. Aug. 17, 2015) ...........7

*Nat'l Spiritual Assembly of Bahá'is of U.S. Under Hereditary Guardianship, Inc.
  v. Nat'l Spiritual Assembly of Bahá'is of U.S., Inc.*,
  628 F.3d 837 (7th Cir. 2010) .................................................................3

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007).............................................12, 15

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
  297 F.R.D. 683 (S.D. Fla. 2014).........................................................15

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) ........................................................13

*Trs. of Sheet Metal Workers' Local Union No. 33 Profit Sharing Annuity Fund v. Beckley Mech., Inc.*,
No. 1:09cv1170, 2013 WL 968273 (N.D. Ohio Mar. 12, 2013) ..........................3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .....................................................................9

*Zamber v. Am. Airlines, Inc.*,
282 F. Supp. 3d 1289 (S.D. Fla. 2017) ...................................................7

*Zamber v. Am. Airlines, Inc.*,
No. 4:20-CV-00114-O, 2020 WL 3163037 (N.D. Tex. June 11, 2020) .............8

## STATUTES, RULES AND REGULATIONS

28 U.S.C. §1715 ....................................................................................10

Federal Rules of Civil Procedure
Rule 23 ..........................................................................................14, 16
Rule 23(c)(2)(B)..................................................................................14
Rule 23(e)(1)(B)(i)...............................................................................16
Rule 23(e)(2)..................................................................................13, 16
Rule 23(e)(2)(D) ...................................................................................7
Rule 65(d)(2)(C) ...................................................................................3

## SECONDARY AUTHORITIES

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N (Sept. 2019), https://www.ftc.gov/system/ files/documents/reports/consumers-class-actions-retrospective-analysis- settlement-campaigns/class_action_fairness_report_0.pdf ...............................14

4852-1086-3317

Plaintiffs Bonnie Foshee, Milita Barbara Dolan, Walter Cappillo, Kristian Zamber, Andrea Durkee, David Lazar, Lisa Salmons, Madeleine F. Shattenkirk, and Randy O'Kane (collectively, "Plaintiffs"),[1] respectfully submit this response ("Response") to the Court's Supplemental Order Seeking Clarification (ECF No. 43) ("Clarification Order").

## A.     The Motion for Attorneys' Fees and Long-Form Notice

The Court expressed concerns that

> the long form notice does not unambiguously notify the class members about their right to object to the attorneys' fees.  Nor does the long form notice apprise the class members when the motion for attorneys' fees will be filed and the number of days they have to file an objection to the fees.

*See* Clarification Order at 2.[2]  The Parties agree with the Court and have amended the proposed Long-Form Notice[3] accordingly.  A revised proposed Long-Form Notice, along with a redline comparison to the original Long-Form Notice, are

---

[1]   Defendants Delta Airlines, Inc. ("Delta"), JetBlue Airways Corp. ("JetBlue"), American Airlines, Inc. ("American"), United Airlines, Inc. ("United"), Alaska Airlines, Inc. ("Alaska"), and National Railroad Passenger Corp. ("Amtrak") (collectively, Defendants"), AGA Service Company ("AGA"), and Plaintiffs are collectively referred to herein as the "Parties."

[2]   Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

[3]   Unless otherwise stated, all capitalized terms herein are defined in the Parties' Amended Stipulation of Class Action Settlement (ECF No. 34-1, Ex. 1).

attached hereto as **Exhibits A** and **B**, respectively, which Defendants and AGA have approved.[4]  Specifically, the revised proposed Long-Form Notice now clearly states that Class Members may object to the motion for attorneys' fees, that the motion for attorneys' fees will be filed 35 days prior to the Fairness Hearing, and that Class Members have 14 days from the filing of the motion for attorneys' fees to object to the same.

### B.    Enforcement of the Settlement and Injunction as to AGA

The Court expressed a concern that, since AGA is a party to the Agreement, but not a party to the current case, the Court may not have the ability to enforce the Agreement or the permanent injunction ("Permanent Injunction") as to AGA, should the need arise.  *See* Clarification Order at 2.

***First***, the Agreement makes clear that because AGA is a "Party" to, and contractually bound by, the Agreement, it is consenting to the Court's continuing jurisdiction over AGA to enforce both the Agreement and the Permanent Injunction therein.  *See* ECF No. 34-1, Ex. 1 at 1, 18 (defining "Parties" to the agreement as including AGA); *id.* at 30 ("The Court retains the ongoing and exclusive jurisdiction and independent case management authority regarding the general operation of the

---

[4]   The Parties noticed a typographical error in the Long-Form Notice relating to the definition of "Plaintiffs' Released Claims," which has also been corrected.  That minor changes to the exhibits to the Agreement could be made was contemplated, as the Agreement indicated that those documents would be "substantially in the form attached hereto[.]"  *See* ECF No. 34-1, Ex. 1 at 17, ¶¶24, 27.

Settlement Administration and those appointed to implement and oversee it."); *id.* at 54 ("Any effort to enforce this Agreement shall be filed in the Consolidated Action.").

*Second*, even if the Agreement did not so provide, the law is clear that AGA is bound by the Agreement and this Court has the necessary authority to enforce the Agreement and its Final Order and Judgment as to AGA.  Federal Rule of Civil Procedure 65, by its express terms, binds not just parties to an injunction, but all "other persons who are in active concert or participation" with a party.  *See* Fed. R. Civ. P. 65(d)(2)(C); *see also F.T.C. v. Leshin*, 618 F.3d 1221, 1236 (11th Cir. 2010) ("The district court did not abuse its discretion by holding that [nonparty] acted in concert and was bound by the injunction."); *Nat'l Spiritual Assembly of Bahá'ís of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Bahá'ís of U.S., Inc.*, 628 F.3d 837, 848 (7th Cir. 2010) ("Broadly speaking, both the rule and the common-law doctrine contemplate two categories of nonparties potentially bound by an injunction.").  AGA falls within the category of persons "in active concert or participation" with Defendants with respect to the Permanent Injunction.

Case law also supports binding AGA to both the Agreement and this Court's continuing jurisdiction to enforce the Agreement and its Final Order and Judgment, including the Permanent Injunction therein.  *See, e.g.*, *Trs. of Sheet Metal Workers' Local Union No. 33 Profit Sharing Annuity Fund v. Beckley Mech., Inc.*,

- 3 -

No. 1:09cv1170, 2013 WL 968273, at *2-3 (N.D. Ohio Mar. 12, 2013) ("Mr. Mahaffey [the personal guarantor of the settlement agreement and president of defendant Beckley] also **consented to the jurisdiction** of the Court over the Settlement Agreement **when he signed the agreement**. . . . Additionally, the Court notes that Fed. R. Civ. Pro. [sic] 71 grants to the district courts the power to enforce orders against a person who is not a party . . . as if a party. It states, [w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."); *Metex Mfg. Corp. v. Manson*, No. 05-2948 (HAA), 2009 WL 10729008, at *3 (D.N.J. July 9, 2009) ("when the non-party refused to perform under the settlement agreement, the court determined that it did not have the authority to enforce the **settlement unless the non-party signed the agreement, thereby submitting itself to the court's jurisdiction**.").

Nevertheless, to hopefully further assuage the Court's concern, and to alleviate any issues relating to enforcement of the Agreement or the Permanent Injunction as to AGA, the Parties have revised the proposed Final Order and Judgment to expressly provide that "the Court hereby retains exclusive and continuing jurisdiction over the Consolidated Action and over all Parties to the Consolidated Action **and the Parties to the Agreement**," including the Permanent Injunction therein. A revised proposed Final Order and Judgment, along with a

redline comparison to the original Final Order and Judgment, are attached hereto as **Exhibits C** and **D**, respectively, which Defendants and AGA have approved.[5]

### C. Fairness of the Monetary Relief

Finally, the Court expressed concerns that it "has no way to determine whether the monetary relief is fair, reasonable, adequate and in the best interests of the Class," because it does not know: (1) Plaintiffs' damages theory; (2) the value of Plaintiffs' damages theory (*i.e.*, the range of recovery); (3) the total number of Class Members; (4) how the total value of Plaintiffs' damages theory measures up to the $26 million Settlement Fund; and (5) how much money each Class Member may potentially receive due to the settlement. *See* Clarification Order at 3-4. Plaintiffs address each of the foregoing issues *seriatim*.

#### 1. Plaintiffs' Damages Theories

The claims raised in this Consolidated Action assert two damages theories. *First*, Plaintiffs allege that they and the Class were damaged by ***Defendants' receipt*** from AGA of undisclosed ***portions*** of the premiums on the Trip Insurance policies they purchased. *See, e.g.*, Consolidated Amended Class Action Complaint (ECF No. 31) ("CAC"), ¶2 ("The net impression of Defendants' representations and omissions to consumers is that, when consumers purchase a trip insurance policy,

---

[5]   As with the Long-Form Notice, the Parties noticed a typographical error in the Final Order and Judgment relating to the definition of "Plaintiffs' Released Claims," which has also been corrected.

100% of the funds to cover the policy's cost go to an independent third-party insurance company, whom Defendants identify as the company brokering the policy for sale to the consumer. In reality, *Defendants ultimately receive an undisclosed fee* in relation to every policy sold.").[6]

*Second*, Plaintiffs allege that Defendants received payments that equated to *portions* of Plaintiffs' and the Class' Trip Insurance premiums in exchange for customer "data sets," in violation of Defendants' privacy policies, which promised customers that they would not sell customer data to certain third parties, such as AGA. *Id.*, ¶45 ("Unbeknownst to Plaintiffs and the Class, *Defendants are compensated* in relation to receipt of that Personal Information by the third-party insurers in violation of Defendants' respective privacy policies.").[7]  Hence, the

---

[6]  *See also id.*, ¶36 ("Defendants' false representations and material omissions necessarily imply to consumers that Defendants do not receive any fees from the sale of trip insurance. However, *Defendants do in fact receive* substantial mon[ies] for AGA marketing and offering its travel insurance on Defendants' site, which Plaintiffs are not made aware of."); *id.*, ¶40 ("In reality, and completely unbeknownst to their consumers, the trip insurance is a revenue center *for Defendants*, as they ultimately receive for themselves a fee for every trip insurance policy their consumers purchase on their websites."); *id.*, ¶106 ("As a direct and proximate result of Defendants' violations of the Consumer Protection Laws, Plaintiffs and the class have been damaged in an amount to be proven at trial. Plaintiffs and the class have a monetary, out-of-pocket loss, as they paid money *to Defendants* as a result of their deceptive conduct.").

[7]  *See also id.*, ¶48 ("Specifically, Defendants, in exchange for a fee, provided AGA with 'data sets' that contained each Class member's Personal Information").

- 6 -

measure of damages in this case is ***only*** "the nondisclosed payments AGA made to Defendants," not "the entire value of the Trip Insurance."[8]  Clarification Order at 3. These are the same damages theories asserted by Plaintiffs in their original actions, the claims in which have been consolidated in this case.[9]

That being said, it is important to point out that Defendants have consistently argued – successfully in more than one instance – that none of the Plaintiffs suffered ***any*** damages in these cases.  For instance, in granting summary judgment to Delta in the *Donoff* case, Judge Middlebrooks agreed with Defendants that "the Plaintiff's

---

[8]    *See, e.g.*, *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1297-98 (S.D. Fla. 2017) ("Plaintiff pleads an injury in fact because he seeks recovery of the portion of his premium that American kept despite making representations about the trip insurance premium that a consumer could reasonably interpret as a 'pass through' charge, to which he is entitled under Florida law."); *Morgan v. Pub. Storage*, No. 1:14-cv-21559-UU, 2015 WL 11233111, at *2 (S.D. Fla. Aug. 17, 2015) (holding that "measure of actual damages . . . is the amount retained by defendant despite the representation that the amount will be transferred to a third-party").

[9]    The proposed settlement provides that Class Members who make a claim may receive up to 15% of their total Trip Insurance purchases, not 15% of the amounts AGA paid to Defendants.  This was intentional for several reasons.  First, calculating cash settlement payments based on the total premium paid for Trip Insurance is much more efficient and economical.  Second, given that the calculation of AGA's fees to Defendants may have differed slightly from Defendant to Defendant, using total premiums to calculate cash settlement payments ensures that Class Members are treated equally and fairly relative to each other.  *See Grant v. Ocwen Loan Servicing, LLC*, No. 315CV01376J34PDB, 2019 WL 367648, at *7 (M.D. Fla. Jan. 30, 2019) (granting final approval and finding that "[t]he Settlement also treats Settlement Class Members equitably relative to each other.") (citing Fed. R. Civ. P. 23(e)(2)(D)).

4852-1086-3317

monetary damage claims are barred by the filed rate doctrine," *Donoff v. Delta Air Lines, Inc.*, No. 18-81258-CV-MIDDLEBROOKS/Brannon, 2020 WL 1226975, at *6 (S.D. Fla. Mar. 6, 2020), and that, because Plaintiff

> paid the premium [for Trip Insurance] established by [AGA] based upon rates filed with [state insurance commissioner] and has not established the amount he paid was different from what was promised, or that his premium was inflated . . . [h]e has therefore suffered ***no loss or actual damage***.

*Id.* at *11. Defendants in each of the other original actions have made virtually identical arguments for either dismissal, summary judgment, or both.[10]

### 2. Value of Plaintiffs' Damages Theories (Range of Possible Recovery)

Notwithstanding Defendants' strong defenses to the claims in this case, including defenses to class certification, as evidenced by their success in some of the original actions, nothing is guaranteed, including Defendants' success on appeal. Thus, it is certainly proper for the Court to consider Plaintiffs' possible recovery,

---

[10] *See also, e.g.*, *Zamber v. Am. Airlines, Inc.*, No. 4:20-CV-00114-O, 2020 WL 3163037, at *8-9 (N.D. Tex. June 11, 2020) ("reject[ing] Zamber's attempt to assert he has suffered an injury by being misled into paying a 'pass-through' charge[,]" and concluding that "Zamber has, therefore, failed to meet his burden at the summary-judgment stage of demonstrating he suffered an injury in fact or that any injury was fairly traceable to the challenged action of the defendant[.]"); *Flores v. United Airlines*, 426 F. Supp. 3d 520, 532 (N.D. Ill. 2019) ("agree[ing] with defendant that plaintiff has not alleged a substantial injury. Where, as here, a plaintiff could have avoided the harm by purchasing a different policy (or not purchasing it at all), she has not suffered a substantial injury.")

where "the focus is on the possible recovery at trial." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322-23 (S.D. Fla. 2005) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981)).[11]

Under Plaintiffs' damages theories, which as explained above are tied to the amounts AGA paid Defendants, not the total amount of Trip Insurance, and assuming for argument's sake that Plaintiffs were successful in achieving – and maintaining – class certification in *every* original action,[12] a complete and total victory for Plaintiffs and the Class at trial would result in a damages award against Defendants of approximately $1 billion.[13]

---

[11] "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Id.* at 1323 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-07 (2d Cir. 2005)).

[12] As the Court is aware, Judge Middlebrooks denied class certification in *Donoff*. *Donoff v. Delta Air Lines, Inc.*, No. 18-81258-CV-MIDDLEBROOKS, 2020 WL 3268272, at *9 (S.D. Fla. Jan. 24, 2020).

[13] The value of the allegedly nondisclosed payments varied for each Plaintiff as it was a function of the ticket price and other factors. Under Plaintiffs' theory, the undisclosed payment from AGA to a Defendant for each purchase of trip insurance averaged approximately $23.00. And, in the aggregate across all Defendants, the amount of the undisclosed payments during the Class Period amounted to approximately $1 billion. This is the maximum recovery of damages that could possibly have been achieved in the cases.

### 3. Total Number of Class Members

Over the last several months, AGA has worked closely with the proposed Settlement Administrator to collect and organize the list of possible Class Members to whom direct email notice will be sent upon Court order. On November 13, 2020, the proposed Settlement Administrator coordinated with Defendants' liaison counsel to serve notice on state attorneys general and others pursuant to 28 U.S.C. §1715, part of the Class Action Fairness Act ("CAFA"). According to the CAFA notice, a copy of which is attached hereto as **Exhibit E**, there are approximately 48.7 million transactions at issue. *See* Ex. E, Attachment A. Given the likelihood that some Class Members purchased Trip Insurance on multiple occasions during the Class Period, there are certainly fewer Class Members than transactions.[14] This number is entirely consistent with discovery conducted in the individual actions and information exchanged during several mediation sessions with Rodney A. Max.

### 4. Comparison of $26 Million Recovery to Total Hypothetical Value of Plaintiffs' Damages Theories

With a total hypothetical class-wide damages recovery of $1 billion, and a Settlement Fund of $26 million, the proposed settlement represents approximately

---

[14]  Once the proposed Settlement Administrator has been appointed, it will conduct a de-duplication of the transaction data to identify situations where potential Class Members purchased more than one policy during the Class Period.

2.6% of total possible damages.[15]  But, to truly understand why this number is fair, it is critical to place the size of the recovery in the context of the overall likelihood of actually achieving a total and complete class-wide victory.  As this Court recognized, "individual Plaintiffs may not recover anything [in this case] without a settlement because Defendants' have been successful in litigating these cases." Clarification Order at 4.  The Court is absolutely correct.  This fact makes the $26 million recovery all the more reasonable and demonstrates that, notwithstanding significant headwinds, Plaintiffs and their counsel persevered and achieved a positive result for the Class that many deemed impossible under the circumstances.

Courts have consistently held that "the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."  *Lipuma*, 406 F. Supp. 2d at 1322-23 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), and approving settlement where defendant would pay $75 million in damages even though intervenors estimated potential total recovery to be $1,478,000,000).

---

[15]  District courts routinely include notice and administrative costs and attorneys' fees in valuing a class action settlement.  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1078-79 (S.D. Tex. 2012) (citing cases).

- 11 -

As Judge Seitz aptly explained in approving a class action settlement that provided $1.5 million in phone cards and additional vouchers to a class of 40 million people:

> These benefits to Defendants' approximately 40 million customers – when viewed against the backdrop of all of the uncertainties, risks, and problems that have surfaced in this litigation (including the limited damages suffered by only 15,000 Subclass members) and the reasonable possibility that Plaintiffs would not have recovered ***anything*** if they had proceeded to trial – weigh heavily in favor of approving this Settlement.

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) (emphasis in original).[16]  Respectfully, this case is no different.

Courts in this Circuit have similarly and consistently held that even very low percentage-of-possible-recovery settlements are fair, reasonable, adequate and in the best interests of the class.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *see also Fla. Educ. Ass'n v. Dep't of Educ.*, 447 F. Supp. 3d 1269, 1276 (N.D. Fla. 2020) (quoting *Behrens* with approval); *Fla. Educ. Ass'n v. Dep't of Educ.*, No. 4-17-cv-414-RH/CAS, 2019 WL 8272779, at *4 (N.D. Fla. Nov. 4, 2019) ("Even a settlement which provides for a low recovery can be quite

---

[16]  *See also In re Soderstrom*, 477 B.R. 249, 256 (Bankr. M.D. Fla. 2012) ("[U]nder these circumstances, a bird in the hand is worth two in the bush.").

reasonable, depending on the strengths and weaknesses of the parties' claims and defenses."); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV-MIDDLEBROOKS, 2017 WL 9472860, at *7 (S.D. Fla. Nov. 20, 2017) (approving settlement awarding class members 0.8% of minimum statutory damages); *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726-GOODMAN, 2015 WL 6872519, at *7 (S.D. Fla. Nov. 9, 2015) (quoting *Behrens* with approval); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to about 2% of expert's damages calculation).

Accordingly, the $26 million Settlement Fund under this proposed settlement is fair, reasonable, and adequate and in the best interests of the Class.

### 5.    Potential Per-Class-Member Recovery

Rule 23(e)(2) of the Federal Rules of Civil Procedure directs the Court to consider whether the relief is adequate in light of "the effectiveness of [the] proposed method of distributing relief to the class."  The advisory committee notes explain that this factor is intended to direct the parties' attention to the claims process, which should not be "unduly demanding" but which should "deter or defeat unjustified claims."  Heeding these mandates, the Parties, with the advice and expertise of the proposed Settlement Administrator, have approached the notice process with the solitary goal of maximizing the total number of claims for cash payments and ensuring that every dollar made available to Class Members makes its way into the

Class' hands.  This is why, for example, the Agreement provides for direct email notice be provided to as many Class Members as possible, as permitted by the recent amendments to Rule 23.  *See* Fed. R. Civ. P. 23(c)(2)(B) (approving notice by "electronic means").  The Agreement also proposes a very simple online claims process requiring little effort on the Class Members' part, and also contemplates a Supplemental Cash Payment to further exhaust the fund before the *cy pres* provision is triggered.

Nevertheless, "[t]he old expression that one can bring a horse to water but cannot make him drink," *Dan River Inc v. Crown Crafts, Inc.*, No. 98-CIV. 3178 LMM AJP, 1999 WL 287327, at *2 n.1 (S.D.N.Y. May 7, 1999), is an unfortunate reality in consumer class action litigation.  In September 2019, the Federal Trade Commission ("FTC") published a study that found that the median calculated claims rate in consumer class actions was 9%, and the weighted mean was 4%.  *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* at 11, FED. TRADE COMM'N (Sept. 2019), https://www.ftc.gov/system/ files/documents/reports/consumers-class-actions-retrospective-analysis-settlement- campaigns/class_action_fairness_report_0.pdf.  And, in fact, courts in this Circuit have routinely approved class action settlements with claims rates lower than the FTC's median and mean.  *See, e.g.*, *Montoya v. PNC Bank, N.A.*, No. 14-20474- CIV-GOODMAN, 2016 WL 1529902, at *22 (S.D. Fla. Apr. 13, 2016) ("[C]lass

settlements featuring low claims rates are routinely approved."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) ("not[ing] that courts in this district have approved claims-made settlements where the participation rate was very low"); *Perez*, 501 F. Supp. 2d at 1377 (approval of settlement with 1.1% of class members returned claim forms).[17]

Here, based on counsel's extensive experience litigating and settling class action lawsuits, and a class size of roughly 45 million, Plaintiffs, using information obtained during discovery, have made good-faith estimates of the likely claims rate in connection with their proposed settlement and the likely payouts per claimant from the Net Settlement Fund (*i.e.*, after fees, expenses, service awards (if any), and notice and administration costs have been deducted):[18]

---

[17] "Provided that notice is adequate, the relief made available to class members is fair, and the settlement is otherwise fair and reasonable, the number of claims submitted at any particular time is not a relevant factor in evaluating the fairness, reasonableness, or adequacy of the settlement." *Hall v. Bank of Am., N.A.*, No. 1:12-cv-22700-FAM, 2014 WL 7184039, at *8 (S.D. Fla. Dec. 17, 2014). Indeed, "[t]here may be many reasons or no reasons why class members decide to participate in a settlement, e.g., a desire not to be involved in litigation, ideological disagreement with the justice system, their individual experiences . . ., or sympathy for the defendant. . . .  Whatever the underlying reason, that is a decision to be made by each class member.  Those decisions, however, do not affect whether the settlement provided to the Class is fair, adequate, and reasonable." *Id.*

[18] Plaintiffs presume only for purposes of these estimates that the Court awards Plaintiffs' counsel their requested 26% of the Settlement Fund as attorneys' fees, all of their expenses, and service awards to Plaintiffs.  Plaintiffs fully recognize that the Court has complete discretion as to the appropriate awards and that the propriety of

| Claims Rate | Approximate Payout[19] |
|:-----------:|:---------------------:|
| 1% | $36.90 |
| 3% | $12.99 |
| 5% | $7.38 |
| 10% | $3.69 |

## CONCLUSION

Plaintiffs are fully cognizant of and appreciate the Court's fiduciary role in determining the fairness, reasonableness, and adequacy of the proposed settlement. The 2018 amendments to Rule 23 highlighted that role by requiring the Court to, *inter alia*, find at this early stage that it "will likely be able to . . . approve the proposal under Rule 23(e)(2)[.]" *See* Fed. R. Civ. P. 23(e)(1)(B)(i). This new amendment protects class members by demanding that the parties supporting a settlement present the district court with sufficient information at the ***front-end*** of the settlement-approval process to enable the court to make that "likely" determination. Plaintiffs sincerely hope that the information presented in this Response fully answers the Court's questions and addresses the Court's concerns.

---

service awards to class representatives remains an open issue in the Eleventh Circuit. *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260-61 (11th Cir. 2020) (petition for *en banc* review pending).

[19] According to AGA's data, the average cost for Trip Insurance is a little over $48.00 for the transactions involved in this proposed class action during the Class Period. Defendants' position in these cases has consistently been that the Trip Insurance offered by AGA was less expensive than what was available elsewhere.

If not, Plaintiffs are available to provide any additional information the Court requests.

## LOCAL RULE 7.1(B) CERTIFICATE
## OF GOOD FAITH CONFERENCE

On December 17 and 18, 2020, Plaintiffs' counsel spoke with Defendants' liaison counsel, who is also AGA's counsel, regarding the substance of this Response, and are authorized to represent that AGA is in agreement with the statements herein regarding the injunction, and that all Parties agree to the proposed revisions to the proposed Long-Form Notice and proposed Final Order and Judgment.

Dated:  December 22, 2020

ROBBINS GELLER RUDMAN
 & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 84824
CHRISTOPHER C. GOLD
Florida Bar No. 088733
BRADLEY M. BEALL
Florida Bar No. 1010635

*s/ Stuart A. Davidson*
Stuart A. Davidson

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/760-3000
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com
bbeall@rgrdlaw.com

LEÓN COSGROVE, LLP
SCOTT B. COSGROVE
Florida Bar No. 161365

- 17 -

4852-1086-3317

ALEC H. SCHULTZ
Florida Bar No. 35022
JOHN R. BYRNE
Florida Bar No. 126294
JEREMY L. KAHN
Florida Bar No. 105277
255 Alhambra Circle, Suite 800
Coral Gables, FL 33134
Telephone: 305/740-1975
scosgrove@leoncosgrove.com
aschultz@leoncosgrove.com
jbyrne@leoncosgrove.com
jkahn@leoncosgrove.com

*Counsel for Plaintiffs and Proposed Lead Class Counsel*

LEVI & KORSINSKY LLP
ROSEMARY M. RIVAS (*pro hac vice*)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: 415/373-1671
rrivas@zlk.com

TAUS, CEBULASH
   & LANDAU, LLP
KEVIN S. LANDAU (*pro hac vice*)
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: 212/931-0704
klandau@tcllaw.com

KANTROWITZ, GOLDHAMER
   & GRAIFMAN, P.C.
BARRY S. KANTROWITZ
Florida Bar No. 0602752
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY 10977
Telephone: 845/356-2570
bkantrowitz@kgglaw.com

- 18 -

THE MOSKOWITZ LAW FIRM
ADAM M. MOSKOWITZ
Florida Bar No. 984280
2 Alhambra Plaza, Suite 601
Coral Gables, FL  33134
Telephone:  305/740-1423
adam@moskowitz-law.com

KOREIN TILLERY LLP
RANDALL EWING JR.*
205 North Michigan Avenue, Suite 1950
Chicago, IL  60601
Telephone:  312/641-9750
rewing@koreintillery.com

BONNETT FAIRBOURN FRIEDMAN
   & BALINT, PC
FRANCIS J. BALINT, JR. (*pro hac vice*)
2325 East Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
fbalint@bffb.com

*Counsel for Plaintiffs and Proposed
Additional Class Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR*
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
tedp@rgrdlaw.com

WITES LAW FIRM
MARC A. WITES
Florida Bar No. 24783
4400 North Federal Highway
Lighthouse Point, FL  33064
Telephone:  954/933-4400
mwites@witeslaw.com

GLANCY PRONGAY &
  MURRAY
MARC L. GODINO (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
mgodino@glancylaw.com

GUSTAFSON GLUEK PLLC
DANIEL C. HEDLUND*
120 South 6th Street
Minneapolis, MN  55401
Telephone:  612/333-8844
dhedlund@gustafsongluek.com

*Additional Counsel for Plaintiffs*

 \* *Pro hac vice* forthcoming

4852-1086-3317

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on December 22, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Stuart A. Davidson*
STUART A. DAVIDSON

ROBBINS GELLER RUDMAN
  & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

E-mail:  sdavidson@rgrdlaw.com

- 21 -